FILED

2020 Nov-20  PM 04:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **ANDRE LASALLE CATER,** | } | |
| | } | |
| **Petitioner,** | } | |
| | } | |
| **v.** | } | **Case No.:  5:17-cv-08046-RDP** |
| | } | **(5:15-cr-00274-RDP-HNJ)** |
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **Respondent.** | } | |

## <u>MEMORANDUM OPINION</u>

Petitioner Andre LaSalle Cater currently is in the custody of the Bureau of Prisons serving a 60-month prison sentence imposed after he pled guilty to one felony count. (Doc. # 1). Petitioner moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his federal sentence. (*Id.*). The Motion has been fully briefed (*see* Docs. # 1, 6, 8, 15) and is ripe for review. The court conducted an evidentiary hearing on this matter on October 29, 2020. (*See* Transcript of Evidentiary Hearing, *Cater v. United States*, 5:17-cv-8046-RDP (N.D. Ala. October 28, 2020) (*i.e.*, "Hr'g Tr.")). After careful review, and for the reasons explained below, the court concludes that Petitioner's Motion is due to be denied.

### I.    Background

On August 26, 2015, Petitioner was indicted on one count of Conspiracy to Possess with the Intent to Distribute Cocaine Hydrochloride, a Controlled Substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count One); and one count of Knowingly and Intentionally Using a Communication Facility, a Telephone, in Committing, Causing and Facilitating the Offense, in

violation of 21 U.S.C. § 843(b) (Count Eleven[1]). (Doc. # 1 in *United States v. Lampkin, et al.*, 5:15-cr-00274-RDP-HNJ (October 26, 2015)) (*i.e.*, "Cr. Doc. # 1"). Relevant to this motion, Petitioner was charged with possessing 500 grams or more of cocaine hydrochloride attributable to Petitioner in Count One, in violation of 21 U.S.C. § 841(b)(1)(B). (*Id.*).

Petitioner pled guilty to Count One during a consent hearing conducted on March 17, 2016. (Cr. Docs. # 338, 768). At his plea hearing, the court and Petitioner engaged in an extensive colloquy. (Cr. Doc. # 768). Petitioner acknowledged under oath that he was "pleading guilty with respect to Count One and in particular the drug quantity (*i.e.*, at least 500 grams of cocaine hydrochloride) alleged in the indictment that's attributable to [him] as to count One." (*Id.* at 32). He also acknowledged that he understood the penalty range related to a conviction under Count One for possessing 500 grams of cocaine hydrochloride. (*Id.* at 32-33). Finally, at the end of the colloquy, Petitioner confirmed that he was "pleading guilty because [he was] in fact guilty of the charge made against [him] in the indictment" and that there was nothing said at the hearing "that [caused him] to want to reconsider the decision…to enter a guilty plea." (*Id.* at 37, 44). The court sentenced Petitioner to sixty (60) months imprisonment as to Count One.[2] (Doc. # 607, 768).

Petitioner filed this Motion on November 6, 2017. (Doc. # 1). He alleges that his counsel in his criminal case, Robert Lance Bell ("Bell"), was ineffective on two grounds. He claims Bell was ineffective in not challenging the drug quantity attributable to him based on his plea and at

---

[1] Defendant was indicted along with numerous defendants for multiple charges related to the charge of conspiracy to distribute cocaine hydrochloride, not all of which were brought against Defendant. The Government dismissed Count Eleven when Defendant pled guilty to Count One. (Cr. Doc. # 607).

[2] The Government agreed to dismiss Count Eleven. (*Id.*).

sentencing. He also claims that Bell was ineffective in failing to properly counsel him through the choice to plead guilty.[3] The Government responded. (Docs. # 6, 15).

On October 29, 2020, the court held an evidentiary hearing. Petitioner testified on his behalf, and the Government called Bell as a witness.[4] (Hr'g Tr. at 20-21).

Petitioner's first ground for relief is that Bell was ineffective for not challenging the 500 grams of cocaine hydrochloride that Petitioner stipulated to in his guilty plea. (Docs. # 1 at 4, 8 at 2, Hr'g Tr. at 7-10). Specifically, he alleges that Bell "failed to raise the issue" that the Government's evidence showed, at most, that 420 grams (which is less than 500 grams necessary for the sentence he received) was the maximum amount of cocaine hydrochloride attributable to him. (Docs. # 1 at 4, 8 at 2).

The evidence related to drug quantity attributable to Petitioner falls into two categories: first, recorded phone calls intercepted pursuant to a warrant and second, the statements of Marcus "Bubba" Lampkin, a co-defendant in the case and the unquestioned leader and organizer of the conspiracy.

As to the first category, the Government conducted a wire-tapping operation and, among others, recorded four of Petitioner's phone calls.[5] One of those was referenced by the prosecutor during Petitioner's plea hearing:

> Cater stated, All right, because he will be here at 3. He wants 7 puppies. Lampkin agreed. Cater said, All right, then. I will blow back at you when I get ready. I'll probably ready for you at 2 … Additionally, Cater told Lampkin, I am going to need 2… During

---

[3] Petitioner's briefing on the issues in his Motion are conclusory. (*See* Docs. # 1, 8). Petitioner elaborated on his arguments in the evidentiary hearing. (*See* Hr'g Tr.).

[4] The court found at the hearing that Petitioner waived his attorney-client privilege with respect to his communications with Bell by filing this Motion. (Hr'g Tr. at 24).

[5] The Government's briefing stated that there were three calls used for drug quantity attribution. (Doc. # 15 at 4). Bell testified at the evidentiary hearing that the Government recorded four incriminating phone calls. (Hr'g Tr. at 22).

an interview, Lampkin advised that Cater used the term "puppies" to refer to ounces of cocaine and identified Cater as the user of the phone.

(Cr. Doc. # 768 at 41-43).[6] While Petitioner does not dispute the calls, he asserts that he never said that he "is going to need 2." (Cr. Doc. # 768 at 42; Doc. # 15 at 2). He contends that he said he would need only one "puppy." (Docs. # 15 at 2, n.1; Hr'g Tr. at 25). And, he claims that dispute is consequential because, as Bell testified, one ounce instead of two ounces would bring the drug quantity discussed in the four recorded calls from 504 grams to about 420 grams.[7] (Hr'g Tr. at 26).

The second category of evidence establishing the drug quantity attributable to Petitioner was Lampkin's statement that Petitioner purchased "one to two ounces of cocaine … every week or two" for six months. (Doc. # 15 at 4; *see* Hr'g Tr. at 28-29). This evidence showed a "historical amount." *United States v. Wilson*, 884 F.2d 1355, 1357 (11th Cir. 1989) (noting that co-defendants' testimony establishing pattern of drug distribution acceptable for attribution purposes). And, when that historical amount is added to the phone call amounts, the total amount attributable to Petitioner was no less than 756 grams. (Doc. # 15 at 4). At the time of his plea, Petitioner was aware of the fact that his phone calls were recorded and that the Government would present Lampkin's testimony to prove that Petitioner distributed at least (actually more than) 500 grams of cocaine hydrochloride. (Doc. # 1 at 4; Hr'g Tr. at 8-9, 18-19).

---

[6] Descriptions of the remaining calls are in the Government's supplemental briefs. (Doc. # 15). Mr. Davis Barlow indicated and Bell testified during the hearing that there actually was a fourth call not in the Government's supplemental brief. (Hr'g Tr. at 26).

[7] Bell testified as follows at the evidentiary hearing:

> It was, I believe Government said – there's four phone conversations. The first one was nine, the second one was five, and the third and fourth were two ounces each, which raised it to 400 -- I mean -- sorry -- 504 grams. And then Mr. Cater -- Mr. Cater said it was eight, five, one, and one, which would have been 420 grams, was his argument. And that was the -- the major difference. And that was just the phone conversations.

(Hr'g Tr. at 26).

4

Petitioner's second ground for relief is that Bell was ineffective in assisting him in navigating the choice of whether to plead guilty or proceed to trial. (Docs. # 1 at 5, 8 at 1-2). Petitioner asserts that Bell told him that he was unlikely to prevail at trial. (Docs. # 1 at 5, Hr'g Tr. at 10). Petitioner asserts that he pled guilty and admitted to the drug quantity in the indictment only because Bell told him to not upset the judge and because Bell inadequately informed him about the case and the Government's evidence. (Docs. # 8 at 2, Hr'g Tr. at 10). Petitioner claims Bell failed to review with him the police reports, Lampkin's statement that Petitioner purchased cocaine hydrochloride from Lampkin for six months (at least for that length of time), and the "math" establishing a drug quantity greater than 500 grams. (Hr'g Tr. At 7-9). Finally, Petitioner asserted at the evidentiary hearing that had Bell accurately explained to him the Government's evidence in a way he understood, he would have "probably went to trial." (Hr'g Tr. at 17).

With respect to these meetings, however, Petitioner admitted that he and Bell discussed a number of matters. For example, Petitioner admits he and "Bell [had] discussions about the fact that even if [Petitioner does not] believe [he] possess[ed] 500 grams or more of powder cocaine, the [G]overnment was contending [he] did." (Hr'g Tr. at 18). He also admitted that he "knew Lampkin would be a witness" against him at trial and he would testify "to a higher quantity" than the amount that Petitioner believed was attributable to him. (*Id.*).

The Government -- through its filings, Bell's testimony, and cross-examination of Petitioner -- disputes Petitioner's allegations. Bell testified that he and Petitioner "met multiple times," listened to the recorded conversations between Lampkin and Petitioner, and evaluated for Petitioner "what [Bell] expected Lampkin to testify" about regarding the drug quantity. (Hr'g Tr. at 26-27, 39-30). After reviewing the evidence, Bell advised Petitioner that "based on … [his] experience [in] … drug cases … a jury would convict him" of a drug quantity greater than 500

grams. (Hr'g Tr. at 27). Bell was preparing for trial "up [until] about a week before … the [guilty] plea" and that it was Petitioner's decision to enter a guilty plea. (Hr'g Tr. at 28, 33). Bell also noted that the Government was not offering a plea agreement that would reduce the attributed drug quantity. (Hr'g Tr. at 26).

## II.    Standard of Review

Section 2255 authorizes a federal prisoner to move the court of conviction to vacate, set aside, or correct his sentence claiming the sentence was imposed in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255(a). Such a motion is subject to heightened pleading requirements that mandate the motion must specify all the grounds of relief and state the facts supporting each ground. *See* Rules 2(b)(1) & (2), Rules Governing § 2255 Proceedings; *see also McFarland v. Scott*, 512 U.S. 849, 856 (1994). A § 2255 petitioner is not entitled to a hearing or post-conviction relief when his claims fail to state a cognizable claim or amount to only conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible. *See Lynn v. United States*, 365 F. 3d 1225, 1239 (11th Cir. 2004); *Caderno v. United States*, 256 F. 3d 1213, 1217 (11th Cir. 2001).

## III.    Discussion

As the Supreme Court has observed:

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.

*United States v. Broce*, 488 U.S. 563, 569 (1989). After careful review, the court readily concludes that Petitioner's guilty plea was knowing and voluntary. (*See* Cr. Doc. # 768).

6

Petitioner claims that Bell was ineffective in counseling him through his guilty plea. (Doc. # 1). He advances this claim even though, during his plea hearing, he confirmed to the court that he was "fully satisfied with the representation and advice that [he had] received" from his counsel. (Cr. Doc. # 768 at 8-9).

"[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Holmes v. United States*, 876 F.2d 1545, 1551 (11th Cir. 1989) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). This test asks: (1) whether the defendant can show that "counsel's representation fell below an objective standard of reasonableness"; and (2) whether the defendant can establish prejudice by showing "that there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lockhart*, 474 U.S. at 57 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984)). In the guilty plea context, this means that, as a general rule, a defendant must show that "he would not have pled guilty and would have insisted on proceeding to trial." *Id.* at 59. And where, as here, "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). To be sure, "[s]crutiny of counsel's performance is 'highly deferential,' and the court indulges a 'strong presumption' that counsel's performance was reasonable." *Reese v. United States*, 2018 WL 6495085, *3 (M.D. Ala. Nov. 15, 2018) (quotation omitted). Counsel is "not ineffective for failing to raise a nonmeritorious claim." *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001).

**A.      Petitioner's Counsel was Not Ineffective by Failing to Challenge the Drug Quantity Stipulated to by Defendant.**

In Count One, the indictment alleged that "the [drug quantity] involved in the conspiracy…as a result of [Petitioner's] conduct" was 500 grams or more. (Cr. Doc. # 1 at 6). Petitioner has claimed, both in his Motion (Docs. # 1, 8) and at the evidentiary hearing, that the amount attributable to him was less than 500 grams. (*See* Docs. # 1, 8). Specifically, Petitioner argues that his counsel was ineffective for failing to challenge this drug quantity because no more than 420 grams of cocaine could be attributable to him based on the Government's recorded telephone conversations.[8] (Docs. # 1, 6).

Because Petitioner has raised questions about the drug quantity stipulation he entered during his plea hearing and Bell's performance in counseling him about that stipulation, the court will look to Petitioner's sworn testimony at the plea hearing regarding the drug quantity.[9] There, the court engaged in an extensive plea colloquy, and Petitioner affirmatively answered the following questions:

> The COURT: Mr. Cater, my understanding is that you're pleading guilty without the benefit of a plea agreement, as we've already indicated, but you are pleading guilty with respect to count one and *in particular the drug quantity alleged in the indictment* that's attributable to you as to count one. Is that true?
>
> MR. CATER: Yes, sir.
>
> THE COURT: All right. So as I said earlier to both of you, the *quantity of drugs* that you are responsible for as part of the conspiracy does have a direct affect on the level of sentencing you're looking at. And what I would like to do is cover with you the minimum and maximum sentences that you're looking at if you plead guilty or are found guilty in this case as part of a jury trial. Count one carries with it a custody sentence in light of the

---

[8] At the evidentiary hearing, Petitioner failed to elaborate with specifics in support of his argument that Bell was ineffective in challenging the drug quantity. Rather, he reiterated that he was "not guilty of the quantity." (Hr'g Tr. at 12). In § 2255 proceedings, the court evaluates only the effectiveness of counsel (*i.e.*, the grounds for an illegal sentence). Thus, the court remains focused on the argument in his Motion (Doc. # 1) that Bell was ineffective for failing to properly counsel him through his plea and the drug quantity.

[9] The court conducted Petitioner's hearing, which involved one of his co-defendants. (*See* Cr. Doc. # 768).

drug quantities involved for [] you, [], of not less than five years nor more than 40 years ... Do [] you understand those minimum and maximum penalties?

. . . .

MR. CATER: Yes, sir.

. . . .

THE COURT: And, Mr. Cater, that's the same thing with you except there's no plea agreement, so this is your minimum and maximum because these are the drug quantities that you're agreeing to and taking responsibility with the Court for in this case. Do you understand that?

MR. CATER: Yes, sir.

(Doc. # 768 at 32-33) (emphasis added).[10]

THE COURT: …. Now, Mr. Barlow, I think you are required to make a factual showing as it relates to Mr. Cater. There's no plea agreement for us to look to supply those facts for him. So what would the Government expect to prove at trial if this case were to proceed to trial as to Mr. Cater in counts one and 11 in particular?

MR. BARLOW: Your Honor, if it pleases the Court, the Government would be prepared to prove the following at a minimum if this case went to trial. In mid-2013, members of the Madison and Morgan County Strategic Counter Drug Team, STAC, a high intensity drug trafficking area, designated task force, and the Federal Bureau of Investigation began an investigation into a cocaine trafficking group headed by Marcus Bubba Lampkin. As part of their investigation, STAC and the FBI received information from various sources as to the drug activities of Lampkin as well as conducting their open surveillance.

On February 18, 2015, the Government sought and was granted a warrant to conduct wiretap operations on phone number 256-221-2107 belonging to Lampkin. That wiretap was terminated on March 10, 2015. During this time period, FBI and STAC agents monitored Lampkin's phone line and conducted surveillance to confirm the information they were hearing. Numerous people, including Andre LaSalle Cater, were heard on the monitored phone line arranging drug deals.

For example, on February 22, 2015, at 2:18 p.m., session 246, a call was intercepted between Cater and Lampkin. During the call, Cater asked if Lampkin had woken up yet. Lampkin replied he would be ready at 3:00. Cater stated, All right, because he will be here at 3. He wants 7 puppies. Lampkin agreed. Cater said, All right, then. I will blow back at you when I get ready. I'll probably ready for you at 2.

---

[10] Cater's plea hearing was conducted with one of his co-defendants who also entered a guilty plea. For clarity, the court has omitted the irrelevant portions of the transcript in which his co-defendant was questioned.

During an intercepted phone call at 3:06 p.m., session 252, Cater told Lampkin, They are crossing the bridge right now. Additionally, Cater told Lampkin, I am going to need 2.

*And, Your Honor, it's my understanding that Mr. Cater disputes that and says he is going to need 1.*

THE COURT: All right.

MR. BARLOW: At approximately 3:08 p.m., surveillance agents observed Lampkin parked on the street in front of 1209 Arbor Street. STAC Agent Thornberry and HPD Sergeant Haulk observed Lampkin's vehicle and a vehicle believed to belong to the individual for whom Cater was arranging the sale of the 7 puppies. During an interview, Lampkin advised that Cater used the term "puppies" to refer to ounces of cocaine and identified Cater as the user of the phone.

THE COURT: Anything further?

MR. BARLOW: That's it, Your Honor.

(*Id*. at 40-42) (emphasis added). But, despite his argument (that he only requested one, not two), at the hearing Cater acknowledged that the Government could prove to the jury the quantity it alleged in the indictment.

THE COURT: A couple things. First, Mr. Cater, do you agree that the facts that Mr. Barlow just reviewed are facts *that he would be able to prove at a trial beyond a reasonable doubt to a jury*?

MR. CATER: Yes.

THE COURT: And do you agree that you did the things he says you did?

MR. CATER: Yes, sir.

(*Id*. at 42) (emphasis added).

 "[T]here is a strong presumption that the statements made during the [plea] colloquy are true. Consequently, a defendant 'bears a heavy burden to show his statements [under oath] were false.'" *United States v. Ross*, 147 F. App'x 936, 939 (11th Cir. 2005) (quoting *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir.1988)). So, "the representations of the defendant, his lawyer,

and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier." *Winthrop-Redin*, 767 F.3d at 1216 (citation omitted).

Petitioner has not overcome that presumption. He acknowledged the Government could prove him guilty of possessing 500 grams. Indeed, the Government intercepted four recorded phone calls that tend to establish that Petitioner was responsible for at least 500 grams of cocaine hydrochloride, without even considering the historical amount. (Hr'g Tr. at 3-4, 26). Petitioner and Bell both testified that they were aware that Lampkin "accused [Petitioner] of buying cocaine from [Lampkin]." (Hr'g Tr. at 8). Petitioner's phone call to Lampkin in which he said he was calling "about [his] usual" circumstantially corroborates Lampkin's statement. (Doc. # 15 at 3). Thus, based on this evidence, and even taking a conservative drug quantity estimate -- "one ounce every two weeks for six months" -- the record establishes a drug quantity well over the minimum of 500 grams was attributable to Petitioner.[11] *See United States v. Williams*, 643 F. App'x 933, 940 (11th Cir. 2016); *see also*, *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012) ("In estimating the quantity, the sentencing court may rely on evidence demonstrating the average frequency and amount of a defendant's drug sales over a given period."); *Wilson*, 884 F.2d at 1357

---

[11] The Government concisely summarized the evidence used to calculate a drug attribution amount well over 500 grams:

> MR. BARLOW: So, Your Honor, based on the phone calls, we have the accrued amount based on the intercepted phone calls in excess of 400 grams. It depends on whether or not Mr. Cater -- and maybe I wasn't eloquent on this at the plea hearing. He disputed one of the calls as being the difference between two ounces and one ounce. So either way, the Government has the -- the recorded phone calls in excess of 400 grams. When I was meeting with Mr. Bell, he reminded me of an additional phone call that I did not set out in my supplemental brief that actually puts it over 500 grams from the phone calls alone. Based on the attributable amount from the proffer we did with the lead defendant, Marcus Lampkin in this case, Mr. Lampkin -- he had told the Government that Mr. Cater would usually buy one to two ounces every one to two weeks. When the Government went through and calculated that, the Government gave Mr. Cater the benefit of the doubt and attributed one ounce every two weeks for six months to Mr. Cater. And so when those two amounts were combined, it was well in excess of 500 grams, Your Honor.

(Hr'g Tr. at 3-4). Later in the evidentiary hearing, the Government defined "well in excess of 500 grams" as *no less* than 756 grams. (Docs. # 15 at 4 n.2, Hr'g Tr. at 25-26). *Williams*, 643 F. App'x at 940 ("This determination may be based on fair, accurate, and conservative estimates of the drug quantity attributable to a defendant.").

(co-defendants' testimony establishing pattern of drug distribution acceptable for attribution purposes); *United States v. Ruan*, 966 F.3d 1101, 1172 (11th Cir. 2020); *United States v. Hinds*, 435 F. App'x 832, 837 (11th Cir. 2011) ("If the amount of drugs seized does not adequately reflect the scale of the offense, the court may estimate a quantity from 'evidence showing the average frequency and amount' of the defendant's drug sales over time.").

Petitioner argues he told Bell that "[Lampkin] was lying" and that, by his calculations, the "amount of cocaine attributable" to him was "under 500 grams." (Hr'g Tr. at 8-9). But this testimony does not overcome the "formidable barrier" that Petitioner's sworn statements to the court erected, especially where the record contains overwhelming evidence that 500 grams of cocaine was attributable to Petitioner, *Winthrop-Redin*, 767 F.3d at 1216 (citation omitted), and Petitioner admitted to the court at the plea hearing that, despite his assertions otherwise, the Government could prove to a jury the amount of drugs attributable to him was 500 grams or more.

Petitioner must show that Bell took actions that "no competent counsel would have taken." *Dell v. United States*, 710 F.3d 1267, 1281 (11th Cir. 2013) (quoting *Chandler*, 218 F.3d at 1315). Thus, the question before the court is not whether Bell's representation was perfect, but whether it was within the range of competence demanded of attorneys in criminal cases. The court easily concludes that Bell's representation was competent well within professional standards.

As previously discussed, Petitioner's evidence fails to show that his statements at the plea hearing were untrue—let alone that Bell also had knowledge of such evidence that would render his actions unreasonable. The court is satisfied that Bell understood his client's position. But, he also knew the evidence the Government would introduce. He was not ineffective in telling Cater he thought the Government would prove its case, even over Cater's protestations. Indeed, our circuit has held that it is not ineffective for counsel to challenge a drug quantity where there was

not a factual basis for such a challenge. *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992). And, this is particularly the case here where Cater pled guilty and himself acknowledged the Government could prove the quantity it alleged.

Further, Petitioner admitted that Bell discussed the discrepancies between the drug quantity that Petitioner thought was attributable to him and what the Government sought to prove; he also knew Lampkin would testify against him. (Hr'g Tr. at 8, 18). And, as Petitioner undoubtedly understood based upon his discussions with Bell, this discrepancy in the drug quantity attributable to him could only be resolved by a jury, as the Government was not offering a recommended sentence based upon a lesser quantity. (Hr'g Tr. at 26-27). Thus, it was reasonable for Bell to counsel as he did. After their numerous discussions, Petitioner made the decision to enter a guilty plea based on the risks of going to trial rather than because of a lack of a factual basis as to the quantity attributable to Petitioner. He may have seller's remorse about that decision now. But, that was the decision he clearly made.

Petitioner's argument also fails at *Strickland*'s prejudice prong. As just discussed, there was plenty of evidence showing Petitioner was guilty of the quantity stipulated to by him. (*See* Docs. # 15; Hr'g Tr. at 26). Thus, Petitioner has not shown that even if Petitioner's counsel challenged the drug quantity, that he would have continued to trial and prevailed on the quantity issue. *See Wilson*, 962 F.2d at 998 ("The real problem … is that [Petitioner] has not suggested any factual basis upon which counsel could have relied in making such a challenge."). There are no summary judgment procedures under the Federal Rules of Criminal Procedure. The only way for Petitioner to challenge the drug quantity in this case was to go to trial. He opted not to do that. He pled guilty to avoid trial.

**B.      Petitioner's Counsel was Not Ineffective in the Handling of Petitioner's Guilty Plea.**

Petitioner also alleges that his counsel was ineffective (1) by discouraging him from proceeding to trial because he "either had to plead guilty to 500 grams or go to trial and risk getting nine and a half years" and (2) for failing to review the evidence with Petitioner. (Hr'g Tr. at 10; *see* Doc. # 8 at 2). But, even if Bell discouraged Petitioner from going to trial, the court explained his rights and consequences of foregoing trial. Indeed, at his hearing, the court and Petitioner engaged in the following colloquies:

> THE COURT: Your lawyers can give you advice about whether they think you should or should not plead guilty, but ultimately it has to be your decision and *it is your respective decision[] alone that control[s]* whether you wish to plead guilty today. Do you understand that?
>
> MR. CATER: Yes, sir.

(Doc. # 768 at 30).

> THE COURT: All right. We are near the end of [] your hearing[]. What I wanted to make sure of is that we have gone over in sufficient detail with [] you the charges that are pending against you to make sure you understand those and also to make sure that you understand the consequences of entering a guilty plea to these charges and that you're knowingly and voluntarily entering your plea. In order to knowingly and voluntarily enter a plea, it still has to be your desire to plead, and what I mean by that is we have gone through this hearing but what I want to make sure [] you understand is this. You're not required to plead guilty in this case. You're not even expected to plead guilty. It still has to be your decision and it only can be your decision about whether you enter a guilty plea. Do [] you understand what I just said?
>
> . . . .
>
> MR. CATER: Yes, sir.
>
> THE COURT: So, in other words, what I would permit you to do even at this point, if you wish to do so, is reinstate your not guilty plea and go to trial to see if the Government could prove these facts as it relates to you. Having said that, if you enter a guilty plea today and I accept that guilty plea and adjudicate you guilty of the charges that you have offered to plead to, then that would be that. You couldn't go back and change your mind and change your plea after you have done that. Do [] you understand that as well?

14

. . . .

MR. CATER: Yes, sir.

(Doc. # 768 at 42-43) (emphasis added).

As already discussed, Petitioner's statements at his plea hearing were under oath and carry a presumption of truth that is a "formidable barrier" in his § 2255 proceedings. *Ross*, 147 F. App'x at 939; *Winthrop-Redin*, 767 F.3d at 1216 (citation omitted). The record demonstrates that Petitioner understood the charge against him, the facts underlying the charge, the potential consequences of his plea, entered his plea voluntarily, and discussed his plea and the charges with his counsel.

Petitioner now asserts that he did not answer those questions truthfully. To summarize, Petitioner testified at his evidentiary hearing that he did respond affirmatively when the court asked him if he had heard anything at the plea hearing "that [caused him] to want to reconsider the decision…to enter a guilty plea" because his "lawyer told [him] not to." (Cr. Doc. # 768 at 37, 44; Hr'g Tr. at 15). Petitioner testified that Bell failed to discuss Lampkin's statements, the phone calls, and how the drug quantities would be applied to him. (Hr'g Tr. at 8-9). And, again, he alleges that he would have gone to trial but for these omissions. (Hr'g Tr. at 17).

Bell testified at the hearing that he reviewed the Government's discovery; calculated the drug attribution amount, with and without Lampkin's testimony; met with Petitioner multiple times in person and on the phone to discuss the phone calls and Lampkin's statements; told Petitioner that he thought, based on his experience, the jury would find him guilty; and was preparing for trial up until one week before plea hearing. (Hr'g Tr. 26-30, 33). Further, as discussed earlier, Petitioner admitted that he and Bell discussed the discrepancies between the drug quantity

Petitioner thought was attributable to him, what the Government sought to prove, and that Lampkin would testify against him. (Hr'g Tr. at 8, 18). The court credits Bell's testimony.

But, even if Bell did not review "all of" the discovery materials with Petitioner (and, to be clear, the court finds that he did), Cater testified that Bell informed him of the charges he faced and the weight of the evidence against him. Based on these admissions, Petitioner has not met the burden to show that his statements at his plea hearing were untrue. The court discredits Cater's testimony that Bell told him not to raise any concerns with the court and that Bell did not thoroughly review the charges and evidence with him. Similarly, the court discredits Cater's testimony that he was forced or coerced into pleading guilty. The court finds that Petitioner entered his plea knowingly and voluntarily based on his assessment, with Bell's assistance, of the strength of the Government's case. The court rejects Cater's conclusory allegations to the contrary. *See Lynn*, 365 F.3d at 1239; *Caderno*, 256 F. 3d at 1217.

To be clear, it was not unreasonable for Bell to advise Petitioner that he was unlikely to prevail at trial. An analysis of the evidence and charges against Petitioner is one of the primary functions of defense counsel. *Florida v. Nixon*, 543 U.S. 175, 187 (2004) ("An attorney undoubtedly has a duty to consult with the client regarding "important decisions," including questions of overarching defense strategy."). And, Bell provided a reasonable assessment based on his professional experience in drug cases. As already discussed, the evidence against Petitioner was more than enough to support a conviction and a finding that the drug quantity was 500 grams or more.

Petitioner has also failed to satisfy *Strickland*'s prejudice prong by showing "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The court finds that Petitioner understood the evidence against

16

him, the risks of trial, and knowingly and voluntarily entered his guilty plea. Indeed, Bell was preparing for trial up until Petitioner entered his guilty plea.

Finally, even if counsel's performance fell below any objective standard of reasonableness (and again, to be clear, it did not), Petitioner was not prejudiced because he expressly acknowledged his rights under oath to the court and acknowledged the penalties he was facing. He understood (and acknowledged under oath) that he was not required to plead guilty, had the option of going to trial, and that his lawyer could not make the decision for him. *See United States v. Wilson*, 245 F. App'x 10, 12 (11th Cir. 2007) ("During the plea colloquy, the district court itself explained to [the petitioner]—in detail—the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting [the petitioner's] guilty plea. Thus, any failure on the part of [the petitioner's] counsel to clearly explain the possible punishment was cured by the district court.").

## IV.    Conclusion

For all the foregoing reasons, Petitioner's Motion (Doc. # 1) is due to be denied. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this November 20, 2020.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE